# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA

## CIVIL RIGHTS COMPLAINT FORM FOR
## PRO SE PRISONER LITIGANTS IN ACTIONS UNDER
## 28 U.S.C. § 1331 or § 1346 or 42 U.S.C. § 1983

Delanie Jamål Battle-Donson          ,

Inmate ID Number:   U81747          ,

*(Write your full name and inmate ID number.)*

**v.**

See attached          ,

**Case No.:** 3:24cv566- MCR-ZCB
*(To be filled in by the Clerk's Office)*

**Jury Trial Requested?**
☑ **YES**   ☐ **NO**

_____,

_____,

*(Write the full name of each Defendant who is being sued. If the names of all the Defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names. Do not include addresses here.)*

_____/



FILED USDC FLND PN
NOV 8 '24 AM10:22

NDFL Pro Se 14 (Revised June 2022) Civil Rights Complaint Prisoner
ClerkAdmin/Official/Forms

1

## FULL LIST OF DEFENDANTS

Honda of America, d/b/a American Honda Motor Company

Honda Automotive,

Honda of Pensacola et al.,

Zane Presley,

Colby Dorris,

Michael Burns,

Chip Simmons,

Connor James McKinley,

David Mathew Valez,

Stephan Ray Chamblis,

Stephen Floyd Sharp,

James Hinson Newton IV,

Andrew Sean Kelley,

Bradley Baylen Baker,

Christopher Chad Miller,

Matthew Ray Tinch,

Corey Nathan Smith,

David Alfred Austin,

Battle-Donson v Honda – Defendants 1

Jake Richard Bandurski,

James Anthony Morris Jr.,

Walter Malvern Matthews,

Larry D. Richardson Jr.,

Thomas Colt Bortner,

Sheriff's Office of Escambia County Florida

Battle-Donson v Honda – Defendants 2

# I. PARTIES TO THIS COMPLAINT

### A. Plaintiff

Plaintiff's Name: _Delanie J. Battle-Donson_    ID Number: _U 81747_

List all other names by which you have been known: _____

_____

Current Institution: _Franklin Correctional Institution_

Address: _____ _1760 Hwy. 67 North_

_____ _Carrabelle, FL 32322_

### B. Defendant(s)

State the name of the Defendant, whether an individual, government agency, organization, or corporation. For individual Defendants, identify the person's official position or job title, and mailing address. Indicate the capacity in which the Defendant is being sued. Do this for ***each and every*** Defendant:

1. Defendant's Name: _See attached next page_

   Official Position: _____

   Employed at: _____

   Mailing Address: _____

   _____

   ☑ Sued in Individual Capacity        ☑ Sued in Official Capacity

   \* Suing all law enforcement defendants both individually and officially

## I(B). DEFENDANTS

Zane Presley, *individually*

Honda Lead Service Manager

6763 Neal Kennington Rd

Milton, FL 32570

(850)-463-5583

Honda Automotive, *individually*

6675 Pensacola Blvd

Pensacola, FL 32505


Colby Dorris, *individually*

Honda Service Manager

5108 Escambia St.

Milton, FL

(512)-431-1719

Honda of Pensacola, *individually*

6675 Pensacola Blvd

Pensacola, FL 32505


Michael Burns, *individually*

Honda Employee

403 Clairmont Dr.

Pensacola, FL 32506

(850)-426-0809

Chip Simmons, *individually*

Escambia County Florida Sheriff

1700 West Leonard St.

Pensacola, FL 32501

(850)-436-9549 | (850)-436-9390


Battle-Donson v Honda - Defendants' Addresses 1

Honda of America, *individually*

1919 Porrance Blvd.

Torrence, California 90501

(800)-999-1009

Christopher Chad Miller, *individually*

Sergeant Deputy

1700 West Leonard St.

Pensacola, FL 32501

Connor James McKinley, *individually*

Deputy

1700 West Leonard St.

Pensacola, FL 32501

Matthew Ray Tinch, *individually*

Deputy

1700 West Leonard St.

Pensacola, FL 32501

Stephen Floyd Sharp, *individually*

Reporting Officer

1700 West Leonard St.

Pensacola, FL 32501

David Alfred Austin, *individually*

Master Deputy

1700 West Leonard St.

Pensacola, FL 32501

James Hinson Newton IV, *individually*

Sergeant Deputy

1700 West Leonard St.

Pensacola, FL 32501

Jake Richard Bandurski, *individually*

Sergeant Deputy

1700 West Leonard St.

Pensacola, FL 32501

Battle-Donson v Honda - Defendants' Addresses 2

Andrew Sean Kelley, *individually*

Deputy 1st Class

1700 West Leonard St.

Pensacola, FL 32501

James Anthony Morris Jr., *individually*

Deputy/K9 Officer

1700 West Leonard St.

Pensacola, FL 32501

Bradley Baylen Baker, *individually*

Master Deputy

1700 West Leonard St.

Pensacola, FL 32501

Thomas Colt Bortner, *individually*

Deputy 1st Class/K9 Officer

1700 West Leonard St.

Pensacola, FL 32501

Walter Malvern Matthews, *individually*

Lieutenant/Shift Officer In Charge

1700 West Leonard St.

Pensacola, FL 32501

Stephan Ray Chamblis, *individually*

Investigator

1700 West Leonard St.

Pensacola, FL 32501

Larry D. Richardson Jr., *individually*

Deputy 1st Class/K9 Officer

1700 West Leonard St.

Pensacola, FL 32501

Sheriff's Office of Escambia, *Officially*

1700 West Leonard St.

Pensacola, FL 32501

Battle-Donson v Honda - Defendants' Addresses 3

2. Defendant's Name: _See previous pages_

Official Position: _____

Employed at: _____

Mailing Address: _____

_____

□ Sued in Individual Capacity      □ Sued in Official Capacity

3. Defendant's Name: _See previous pages_

Official Position: _____

Employed at: _____

Mailing Address: _____

_____

□ Sued in Individual Capacity      □ Sued in Official Capacity

*(Provide this information for all additional Defendants in this case by attaching additional pages, as needed.)*

## II. BASIS FOR JURISDICTION UNDER 28 U.S.C. § 1331 or § 1346

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution" and federal law. Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971), you may sue federal officials for the violation of certain constitutional rights.

Are you bringing suit against (*check all that apply*):

☐ Federal Officials (*Bivens case*)    ☑ State/Local Officials (*§ 1983 case*)

## III. PRISONER STATUS

Indicate your confined status:

☐ Pretrial Detainee              ☐ Civilly Committed Detainee

☐ Convicted State Prisoner       ☐ Convicted Federal Prisoner

☐ Immigration Detainee           ☑ Other (*explain below*):

At the time of accrual of the cause of action I was a Pretrial Detainee.
I am now currently a Convicted State Prisoner.

## IV. STATEMENT OF FACTS

Provide a short and plain statement of the *facts* showing why you are entitled

to relief. Describe how *each* Defendant was involved and what each Defendant

did, or did not do, in support of your claim. Identify when and where the events

took place, and state how each Defendant caused you harm or violated federal

law. Write each statement in short, numbered paragraphs, limited as far as

practicable to a single event or incident. *Do not make legal arguments, quote

cases, cite statutes, or reference a memorandum.* You may make copies of

page 6 if necessary to supply all the facts. Barring extraordinary circumstances,

no more than five (5) additional pages should be attached. Exhibits attached to

the complaint will count as part of your page limitation. Therefore, do not attach irrelevant or unnecessary exhibits. Facts not related to this same incident or issue must be addressed in a separate civil rights complaint.

please see next page

# IV. STATEMENT OF FACTS

<u>Table of Contents</u>:

General/Background Facts          Page 2

Claim I Facts                     Page 10

Claim II Facts                    Page 19

Claim III Facts                   Page 28

Claim IV Facts                    Page 36

Claim V Facts                     Page 40

Claim VI Facts                    Page 43

Claim VII Facts                   Page 46

## GENERAL/BACKGROUND

*Facts establishing parties, types of jurisdiction and causes of action*

1. Plaintiff is Delanie J. Battle-Donson. Current address is: 1760 Hwy. 67 North, Carabelle, FL 32322.

2. Defendant Pensacola Honda is a corporation, an authorized dealership of Defendant Honda of America and is located at: 6675 Pensacola Blvd., Pensacola, FL 32505.

3. Defendant Honda of America is a corporation; is a vehicle manufacturer; provides training and certification of employees of Defendant Pensacola Honda and authorizes the dealership to sell its new vehicles; hires, fires, promotes, demotes, provides training for and certifies employees of Defendant Honda Automotive (including Defendants Zane Jay Presley, Colby Dorris and Michael Burns II); and headquartered at 1919 Porrance Blvd., Torrence, California 90501.

4. Defendant Honda Automotive is the service entity of Defendant Pensacola Honda, employer of Defendants Zane Jay Presley and Michael Burns II, an authorized service provider and agent of Defendant Honda of America, and is also

Battle-Donson v Honda - Statement of Facts – Page 2

located at: 6675 Pensacola Blvd., Pensacola, FL 32505.

5. Plaintiff purchased his vehicle new from Honda of Pensacola dealership (henceforth "Pensacola Honda") on October 2019 and routinely had his vehicle serviced exclusively at this location until April 6, 2021.

6. The primary cause of action for this civil rights violation complaint was initiated on April 6, 2021 at Defendant Pensacola Honda's location.

7. Defendant Zane Presley, according to sworn information provided to law enforcement, is a lead service manager for Honda Automotive and resides at 6763 Neal Kennington Rd., Milton, FL 32570.

8. Defendant Zane Presley was performing duties assigned or directed to him by Defendant Honda Automotive (establishing policies and customs of service of vehicles, and managing vehicle service) during the time that lead up to and including the Plaintiff's arrest at Pensacola Honda.

9. Defendant Colby Dorris, according to sworn information provided to law

enforcement, is a service manager for Pensacola Honda and resides at 5108 Escambia St., Milton, FL 32570.

10. Defendant Colby Dorris, according to sworn information provided to law enforcement, was performing duties assigned or directed to him by Defendant Pensacola Honda (servicing or managing the service of vehicles) during the time that lead up to and including the Plaintiff's arrest at Pensacola Honda.

11. Defendant Michael Burns II is an employee of Honda Automotive and resides at 403 Clairmont Dr., Pensacola, FL 32506.

12. Defendant Michael Burns II was performing duties assigned or directed to him by Defendant Honda Automotive (servicing or managing the service of vehicles) during the time that lead up to and including the Plaintiff's arrest at Pensacola Honda.

13. Defendant Sheriff's Office of Escambia County Florida (henceforth ECSO) is headquartered at: 1700 West Leonard St., Pensacola, FL 32501.

14. Defendant ECSO is the employer of the following defendants: Connor James McKinley (Deputy), David Mathew Valez (Arresting Officer), Stephan Ray Chamblis (Investigator), Stephen Floyd Sharp (Reporting Officer), James Hinson Newton IV (Sergeant), Andrew Sean Kelley (Deputy 1st Class), Bradley Baylen Baker (Master Deputy), Christopher Chad Miller (Sergeant), Matthew Ray Tinch (Deputy), Corey Nathan Smith (Senior Deputy/K9 Officer), David Alfred Austin (Master Deputy), Jake Richard Bandurski (Sergeant), James Anthony Morris Jr. (Deputy/K9 Officer), Walter Malvern Matthews (Lieutenant/Shift Officer In Charge), Larry D. Richardson Jr. (Deputy 1st Class/K9 Officer), Thomas Colt Bortner (Deputy 1st Class/K9 Officer ).

15. The defendants listed in fact point numbered 14 (above) will be further referred to as "collective group of deputies on scene".

16. Defendant Chip W. Simmons is the Sheriff of Escambia County Sheriff's Department, policy maker of the department, and sets the customs of the department as well.

17. Defendant Connor James McKinley is one of the deputies that directly and

illegally searched the Plaintiff's vehicle and duffel bag.

18. Defendant David Mathew Valez is the arresting officer.

19. Defendant Stephan Ray Chamblis is also a reporting officer.

20. Defendant Stephen Floyd Sharp is also listed as a reporting officer and illegally searched the Plaintiff's belongings.

21. Defendant James Hinson Newton IV is a sergeant, the case supervisor or approving supervisor and oversaw the investigation and arrest of the Plaintiff and followed the customs set forth by the Sheriff.

22. The violation of the Plaintiff's civil rights by the Defendant ECSO in the form of an illegal search of his vehicle and duffel bag and seizure of his possessions found within (4th, 5th and 14th U.S. Constitutional Amendment violations), on the Defendant Pensacola Honda's property, is the cause of action that gives this court jurisdiction.

23. The Plaintiff is suing the collective group of deputies and the Sheriff, Chip Simmons, in their personal and official capacities.

24. The collective group of deputies acted with callous or reckless indifference for the Plaintiff's rights by commencing an illegal search, arresting him without probable cause, and working to have him detained long-term which was a consequence of his arrest since he was out on bond and the group of officers were knowledgeable of all this.

25. The criminal charges sought by the Defendants Pensacola Honda, Zane Presley, Colby Dorris, & Michael Burns II that took place at the same location as the primary cause of action, and that stems from the same facts, and were ultimately dismissed (culminating into the Florida state law tort of Malicious Prosecution) gives this court supplemental jurisdiction if it chooses to exercise such at the Plaintiff's request.

26. Ancillary matters that the court is also requested to consider under pendent or supplemental jurisdiction include: False Arrest (Plaintiff was arrested and held in detention for at least 10 months until the matter was completely resolved), Abuse

of Process (use of law enforcement & court proceeding to illegally bar the Plaintiff from doing business at Pensacola Honda), Negligence (Defendants showed disregard for the Plaintiff's rights and liberty amongst other things) and Fraud (Defendant Zane Presley, a Honda employee, mislead the Plaintiff in regards to diagnostic results of his vehicle and mislead the state court), and finally Slander & Libel (false reports/omission of comments on lack of criminal acts were made by Defendants Pensacola Honda, Zane Presley, Colby Dorris, and Michael Burns II).

27. The Plaintiff understands that the Northern District of Florida federal court and the 1st Judicial Circuit of Florida state court have concurrent jurisdiction in this matter. The Plaintiff is seeking redress in the federal court because he fears he will not have a fair legal proceeding in the state court and that the state court will show bias to the defendants in this case: the Escambia County Sheriff's Department (which is a corresponding executive agency in the 1st circuit) and the Pensacola Honda Defendants (which were state witnesses and alleged victims in a state criminal case). Also, the Plaintiff has been convicted and sentenced in the 1st Circuit state court and said conviction is ripe with prejudicial errors and not based on substantial and competent evidence. The Plaintiff doesn't trust that the priority of the state court is in the best interest of justice and requests that the federal court

take jurisdiction of all claims within this complaint to ensure the violations to his constitutional rights, federal law and state law are judged fairly and in an unbiased fashion. Any facts presented in one claim and applicable to another should be implied if not explicitly restated. I, Delanie Jamal Battle-Donson, the plaintiff, declares under penalty of perjury that all facts aforementioned to and following this declaration, in this complaint, are true and correct to the best of his knowledge.

CLAIM I

*Violation of Plaintiff's Right to Privacy & Due Process - 4th, 5th & 14th Amendment Rights per U.S. Constitution: Illegal Search & Seizure, Deprivation of Liberty & Property as well as other Due Process violations of Plaintiff's rights committed by Defendant ECSO*

1. On April 6, 2021 at Defendant Pensacola Honda's location before 9:30am, deputies were dispatched to investigate a call of a possible armed disturbance.

2. Defendant ECSO deputies (henceforth "deputies") spoke/interviewed/took incident reports from Defendants Presley, Dorris, and Burns; Deputies searched the Plaintiff's vehicle and duffel bag (albeit illegally) thereafter his person and didn't find any firearm. Thus establishing a basis that no armed disturbance had occurred.

3. Subsequently, deputies failed to make a reasonable acknowledgment of the lack of circumstances necessary to conclude a felony had been committed.

4. The search of the Plaintiff's vehicle and duffel bag was illegal because there was no search warrant. Neither was there any probable cause, based on the security

Battle-Donson v Honda - Statement of Facts – Page 10

footage or Defendants Presley, Dorris, and Burns reports, or deputies' reports that the Plaintiff ever had a firearm or that one was in the Plaintiff's vehicle. At most there were only untrue comments made by the defendants that amounted to hunches or hints that the Plaintiff was armed. The defendants never alleged to have seen the Plaintiff with a firearm. The defendants never alleged that Plaintiff made any unequivocal statements as to having a firearm. The security footage doesn't ever show the Plaintiff with a firearm, or assaulting, or making threatening actions towards anyone. Thus the ensuing search and seizure amounted to a violation of the Plaintiff's U.S. Constitutional 4th Amendment right.

5. The search of the Plaintiff's person once he was unlawfully arrested was further violation of his 4th, 5th & 14th U.S. Constitution Amendment rights.

6. While inside the service drop-off area of the dealership, the Plaintiff had on his person a duffel bag which he was using as an impromptu carrying case for his puppy which he had brought along with him.

7. Also in the bag were miscellaneous items for his puppy.

8. Safely secured in the bag with her head protruding out the flap, the puppy was clearly visible to Defendants Presley, Dorris, and Burns and the other employees and customers of Pensacola Honda.

9. After dropping off his car the Plaintiff walked north on Pensacola Blvd. to Dollar General to get some food and water for his puppy.

10. When the Plaintiff returned to the dealership, his car was sitting in the area right outside the service bay and was not being tended by a member of the service team.

11. Per the Plaintiff's past visits, which are numerous, this was odd because from the drop-off area the vehicle is usually taken directly to the service bay. It may sit in the drop-off area for some time but it has never been left outside in between the two areas.

12. The Plaintiff didn't make any threats or assault anyone before leaving for Dollar General or upon returning. The Plaintiff was not armed before leaving for Dollar General or upon returning.

13. When the Plaintiff peacefully and reasonably inquired about his car being left outside the service bay, Defendant Zane Presley informed him that "we're waiting on dispatch".

14. The Plaintiff didn't realize that law enforcement had been called on him. The Plaintiff had done nothing unlawful by taking his car to be serviced, leaving to get food and water for his puppy at the store, and returning to the dealership.

15. The Plaintiff was not satisfied with the service provided that day since his car was obviously not being serviced and reasonably requested the return of his keys.

16. Initially, Defendant Presley denied his request and then eventually after 15 or twenty minutes, after the Plaintiff asked several more times non-threateningly, Defendant Presley returned the Plaintiff's keys to the Plaintiff.

17. After getting his keys the Plaintiff's intention was to walk his puppy while waiting on his fiancee to meet him at the dealership. They were then going to go to brunch in separate cars. This was a change of plans as originally the Plaintiff was

going to leave his car for servicing while him and his fiancee went to brunch, then

come back and pick it up afterward.


18. The Plaintiff called his fiancee and told her about the change of plans and she

informed him that she was on the way but was delayed by a motorcade of Sheriff's

deputies en route to some emergency. Neither knew that the deputies were on the

way to unlawfully arrest the Plaintiff.


19. Once deputies arrived, the Plaintiff was just outside the rear of the vehicle

intake lobby - still on dealership property - in a grassy area walking his puppy.


20. The Plaintiff had the puppy's leash in one hand, his car keys and his phone in

another.


21. An unknown deputy, that had arrived in an unmarked white Crown Vic, ordered

the Plaintiff at gunpoint to lie face down and relinquish the puppy's leash to the

deputy.


22. The Plaintiff was surprised at the sudden appearance of law enforcement and

with a gun drawn on him feared he would be shot. He complied with the deputy immediately.

23. While in the patrol vehicle of one deputy the Plaintiff overheard the deputies discussing an armed disturbance at the dealership and the Plaintiff told deputies that he didn't have any firearms but he was ignored.

24. The Plaintiff then inquired about his arrest and Sergeant Deputy James Hinson Newton IV threatened to "put more charges" on the Plaintiff if he continued to speak and that "[the Plaintiff] would have his day in court".

25. The Plaintiff avows that he heard deputy Sergeant James Hinson Newton IV say in a response to an unheard question from another unknown deputy: "If I could charge him with more I would!" Sergeant James Hinson Newton IV was one of many supervisors and made a recommendation to arrest.

26. Once the Plaintiff's fiancee arrived she was threatened by Sergeant James Hinson Newton IV to leave or she would be arrested as well. She did nothing to be arrested or to be told to leave as beforehand she had told the deputies she was

willing to take the puppy and the Plaintiff's car keys, as well as any other property allowed.

27. Deputies gave her the puppy but not the keys or any other property and the Plaintiff's vehicle was later impounded by deputies.

28. The Plaintiff was taken to the Escambia County jail and had to sit in the patrol vehicle for several hours outside of the jail before being booked.

29. He was initially arrested for aggravated assault of Defendants Presley, Dorris, and Burns.

30. The Plaintiff's mother had to pay a sum of more than $400 to get the vehicle released from the impound.

31. The ensuing criminal case against the Plaintiff was ultimately fully dismissed December 13, 2021. The State of Florida did not contend the motion to dismiss at all, and conceded to it in fact. Before the dismissal a motion to suppress was filed. This motion was granted by the court. No opposition was made to this motion

either by the State of Florida. Thus the search was deemed illegal and any so called evidence stemming from the illegal search was deemed "fruit of a poisonous tree".

32. By doing the aforementioned, deputies violated the Plaintiff's rights per the U.S. Constitution's 4th Amendment (protection from illegal search & seizure), 5th Amendment (right to due process) and 14th Amendment (5th amendment right to due process applied at the state level) by illegally searching the Plaintiff's vehicle, his duffel bag, seizing property therein both, impounding his vehicle and unlawfully arresting the Plaintiff for aggravated assault without any probable cause after a 4 hour investigation that had dispelled any grounds for reasonable suspicion or evidence of a crime.

33. Any one of the deputies, from the collective group of deputies on the scene, could have stepped up to stop the violation of the Plaintiff's rights but did not, making them all personally culpable and liable.

34. Sheriff, Chip Simmons, has created a custom of violating citizens' rights as can be evinced by a myriad of non-related complaints against the collective group of deputies involved with Plaintiff's illegal search and arrest – 1,700 pages of

complaints.

## CLAIM II

*Malicious Prosecution of Plaintiff by Defendants Honda Automotive, Pensacola Honda, Zane Presley, Colby Dorris, and Michael Burns*

1. First element of State of Florida's common law tort of Malicious Prosecution (criminal proceeding commenced against Plaintiff) is satisfied by the following facts:

   - Plaintiff was arrested on charges of Aggravated Assault inter alias on April 6, 2021 at Defendant Pensacola Honda's location.

   - Though Plaintiff  was initially charged with felony counts of Aggravated Assault the counts were ultimately lowered to misdemeanor Simple Assault (3 counts)

   - A misdemeanor criminal proceeding ensued based on the fallacious accounts given by the Defendants Presley, Dorris, and Burns.

2. Second element (Defendants were legal cause of original criminal proceeding against Plaintiff) is satisfied by the following facts:

   - Alleged victims were Defendants Presley, Dorris, and Burns.

   - Defendants Pensacola Honda, Presley, Dorris, and Burns were the only non-law enforcement witnesses.

- Defendants Presley, Dorris, and Burns gave false statements to law enforcement and created false impression that Plaintiff was dangerous and armed with a firearm.

- Defendants Presley, Dorris, and Burns were in their normal course of employment during the entire incident leading up to the Plaintiff's arrest: performing the intake of vehicles for service, servicing vehicles or managing service, communicating with customers in regards to the the service of their vehicles, etc. for Defendants Honda Automotive and Pensacola Honda.

3. Third element (bona fide termination of proceeding in Plaintiff's favor) is satisfied by the following facts:

- The criminal case was resolved in the Plaintiff's favor via a motion to suppress findings of illegal search of Plaintiff's person/possessions/vehicle which was accepted without rebuttal from State and granted by court.

- Subsequently, a motion to dismiss was accepted by the State prosecutor with no rebuttal and granted by the court.

- Given the State's concessions to the motions detailed above in the original criminal proceeding against the Plaintiff, and the fact that the

original trial court granted both motions and fully dismissed the case against him, this resulted in a bona fide termination in the Plaintiff's favor.

4. Fourth element (no probable cause) is satisfied by the following facts:

- No firearm was found on the Plaintiff's person, in his possessions, or in his vehicle so there was no probable cause for the criminal case against him.

- Also there is no video footage of him assaulting any employee of Pensacola Honda or Honda Automotive, any customers or individuals whatsoever with or without a weapon.

- The victims didn't suffer any physical injuries

- There was no prima facie evidence of all the elements of the crime of assault being fulfilled, therefore neither the greater offense of aggravated assault.

- Though Defendants Presley, Colby and Dorris alleged that the Plaintiff made an intentional, unlawful threat by word or act to do violence to them, it was not coupled with an apparent ability to do so, and the Plaintiff did nothing to create a well-founded fear in any defendant listed above that such violence was imminent.

5. Fifth element (Defendants showed legal malice) is satisfied by the following facts:

- Defendants Presley, Dorris, and Burns acted with indifference towards Plaintiff's person, property, liberty and rights when knowingly making false reports on him that lead to his arrest.

- False report was made and Plaintiff was arrested at gunpoint.

- Plaintiff could have been shot by deputies or hurt due to Defendants Presley, Dorris and Burns' allegations that he was armed and threatening them.

- Plaintiff's property (including his gold necklace, silver necklace, gold bracelet, silver bracelet, Pixel 4a smart phone, Samsung Galaxy 4 smart watch, Smok Vaporizer, Adidas duffel bag, bespoke torch lighter, tailored carrying pouch & vehicle) was illegally searched and seized/impounded.

- Plaintiff's 1st Amendment Constitutional right, as well as 4th, 5th and 14th were violated when Defendants Presley, Dorris, and Burns slandered him and produced libel in the form of false sworn verbal and written statements to law enforcement and  Defendant ECSO's ensuing illegal search and seizure of property (vehicle included).

- Per Florida Constitution Article 1, Section 2: Plaintiff has the right to enjoy life and liberty, pursue happiness, and acquire and possess property. These rights were violated by Defendants Honda Automotive, Pensacola Honda, ECSO, Presley, Dorris, and Burns the day of the false report, his unlawful arrest, and the illegal search.

- Plaintiff's right to freedom of speech was violated per Florida Constitution Article 1, Section 4 when Defendants Presley, Dorris, and Burns defamed him via false report, and in depositional statements. Defendants showed legal malice, if not actual malice, by working successfully to have Plaintiff arrested and have his bond revoked, which would have made it reasonably impossible to continue making payments on his car meaning it would have been repossessed and his credit rating negatively affected.

- Also Plaintiff's right to freedom of speech was violated per 1st Amendment of the U.S. Constitution when the ECSO Sergeant Deputy Newton told him to shut up or more charges would be filed when the Plaintiff tried to give his side of the story.

6. Sixth and final element (the Plaintiff suffered damage) is satisfied by the following facts:

- Plaintiff suffered damage to his reputation, finances, mentally, and emotionally as well as legally by his arrest at Defendant Pensacola Honda and Honda Automotive's location stemming from false reports by its service manager(s) and employee: Defendants Presley, Dorris, and Colby.

- The arrest was in the local news and assassinated his character and didn't help his image to the public but harmed it.

- Plaintiff was unable to make any income the 10 months he was incarcerated for the false charges.

- The imputed loss is over $80,000 which is the gross amount he would have made if he was out of jail and able to work.

- He was a Quality Assurance Automation Software Tester making $100,000 a year or more.

- Plaintiff suffered mental and emotional anguish as he was unable to spend time with his child, his fiancee and his step children, as well as visit his grandmother, mother and other family members.

- The Plaintiff had his work experience in the fast moving software industry stagnate and languish over time, becoming less marketable as the months went by.

- The Plaintiff was evicted from his rental home and fell behind on his car payments risking repossession.

- The Plaintiff missed bill and credit card payments which destroyed his credit rating which he had been repairing for the past two years.

- The Plaintiff suffered several Covid-19 outbreaks and quarantines while in Escambia County Jail.

- The Plaintiff had his bond of $101,000 for an unrelated matter revoked which took two extra months to get reinstated (thus the 10 months total time waiting in jail to get the matter fully resolved after the granting of the motion to dismiss for the Pensacola Honda arrest).

- During his confinement the Plaintiff was assaulted by inmates in Escambia County jail, had his property stolen and had to go to the infirmary for medical treatment where he was instead forced to sleep on the floor in a cell with three psychologically unstable inmates where a physical altercation broke out between two of them leading to everyone in the cell being pepper sprayed.

- The Plaintiff was also unable to effectively work with his attorney in a separate legal matter due to his incarceration.

- The Plaintiff avows that he believes if he was not in jail for 10 months

he could have assured a much more positive outcome to the other criminal proceeding for which he was out on bond for & that which was revoked due to this arrest.

- Ultimately the Plaintiff believes he was legally handicapped by his incarceration because his contact and communication was severely limited, delayed and interfered with by jail policy and shoddy technology infrastructure for jail video visits with his attorney.

- Plaintiff's defense attorney who represented him in this matter and the other criminal matter took advantage of his incarceration by doing minimal and ineffective work which led to a maximum 15 year sentence which he is serving prison time for and fighting on direct appeal currently.

- The damage done at Pensacola Honda, as detailed above, had a severe domino effect and has caused incalculable harm.

- If not for Defendant Pensacola Honda and Honda Automotive, and it's service managers and employees, the Plaintiff could have fought his original case out on bond and potentially gotten a much more favorable outcome – afforded another lawyer. Instead he spent 20 months in county jail and then was subsequently sentenced to 15 years

in state prison.

- The Plaintiff was barely able to retain his defense counsel and required financial assistance from his mother to do so (counsel threatened to withdraw from case due to lack of payment). Even still the Plaintiff was unable to procure an expert witness (which cost $5,000) which would have helped his case because the Plaintiff was his only witness in that matter and an expert could have helped raised more reasonable doubt and circumvented his guilty conviction.

<u>CLAIM III</u>

*False Arrest of Plaintiff by Defendant ECSO caused by false report from Defendants Presley, Dorris and Burns leading to his unlawful detention for at least 10 months and at most 22 months*

1. Plaintiff avows an employee of Defendant Pensacola Honda or Honda Automotive: most likely Defendants Presley, or Dorris, or Burns called law enforcement about the Plaintiff on April 5, 2021 (a day before the actual arrest of Plaintiff). It is unlikely that anyone other than an employee of Pensacola Honda or Honda Automotive called law enforcement this day and again on April 6, 2021 for the same reason – armed disturbance. Also the only reports given on the scene when law enforcement arrived were by Defendants Presley, Dorris, and Burns further leading credence to this allegation.

2. The Plaintiff avows he had not done anything warranting this. On that day – April 5, 2021 – he was attempting to get an emissions problem with his car diagnosed and serviced. He was told by Defendant Zane Presley that the issue would resolve itself after three ignition starts of the vehicle. Trusting Presley's analysis the Plaintiff left, expecting the issue to resolve itself

throughout the course of the day. The Plaintiff had no knowledge that law enforcement had been requested. The Plaintiff was gone by the time law enforcement arrived.

3. The next day – April 6, 2021 – in a subsequent attempt to get the unresolved issue with his vehicle fixed the Plaintiff returned to the dealership. He was still unaware that law enforcement had been requested the day before.

4. On April 6, 2021 the employees of Pensacola Honda or Honda Automotive, the service manager defendants or otherwise, again requested law enforcement to be dispatched to the dealership for a possible armed disturbance pertaining to the Plaintiff.

5. The employees (including Defendants Presley, Dorris, and Burns) were in their normal course of work during the entire incident leading up to the Plaintiff's arrest (on April 5th and April 6th): performing the intake of vehicles for service, servicing vehicles or managing service, communicating with customers in regards to the the service of their vehicles, etc.

6. The reports given to law enforcement by Defendants Presley, Dorris, and Burns were not true, were misleading, and falsely accused the Plaintiff of making threats and assault.

7. By doing this Defendants Presley, Dorris, and Burns encouraged the

detention of the Plaintiff and were in fact successful in their ruse ultimately on April 6th, though their first attempt was unsuccessful on April 5th.

8. If Plaintiff had not left in time the day before – April 5, 2021 – they would have accomplished this malfeasance sooner.

9. The fact that the Plaintiff did nothing to warrant law enforcement's dispatch on April 5th and 6th further shows the Defendant's bad intentions.

10. It is reasonable to infer that the Defendants intended the Plaintiff to be arrested based on their false allegations.

11. At no time before his arrest did the Defendants ask the Plaintiff to leave the dealership.

12. As detailed later in these facts – on April 6, 2021 – Defendant Presley actually did the opposite by not giving the Plaintiff his keys to his vehicle when the Plaintiff requested. The Plaintiff realized, at the direction of Defendant Zane Presley that there was no intention for any employee of Pensacola Honda or Honda Automotive to service his vehicle that day.

13. Defendants Presley, Dorris, and Burns did nothing to alleviate the wrongdoing of giving false reports before the Plaintiff's arrest where they had ample opportunity to do so both on April 5th and 6th or thereafter.

14. Defendants Presley, Dorris, and Burns did nothing to alleviate their

wrongdoing afterward either, as depositional testimony will show. They continued to allege Plaintiff made threats – which he avows he did not.

15. Defendants Presley, Dorris, and Burns are liable for the false arrest of Plaintiff based on their procurement of his detention because they made sworn statements to law enforcement which were in fact false and not in good faith.

16. On April 6, 2021 Defendant Presley denied Plaintiff's request several times to give him back his vehicle's keys. After further requests and what seemed to be 15 to 20 minutes Defendant Presley finally gave the Plaintiff back his keys. Defendant Presley had no legal authority to confine Plaintiff to Pensacola Honda by restricting his access to his vehicle so that effectively he couldn't leave for his next destination – a rendezvous with his fiancee for breakfast at the restaurant *A Broken Egg*.

17. Defendants ECSO had no arrest warrant for the alleged incident at Defendant Pensacola Honda's location and were not there themselves to witness any alleged wrongdoing.

18. After investigating the allegations it was unreasonable for Defendant ECSO to arrest the Plaintiff as there was no wrongdoing shown on the security footage, no firearm was found on the Plaintiff's person or in his vehicle

(though the search itself was illegal), and the Plaintiff had not admitted to having a firearm. In fact the Plaintiff did the opposite and stated explicitly that he did not have a firearm after overhearing conversation of the lead Deputy with another deputy about the false allegations made by the other defendants.

19. The Plaintiff was being held in a deputy's patrol vehicle when he overhead the conversation between the lead deputy and his subordinate. The Plaintiff had just been moved from one patrol vehicle to another one. The Plaintiff had been in patrol vehicles on the scene for at least 30 minutes or more while the deputies where adding as many charges as they wanted as inferred by the lead deputy's comments: "If I could charge him with more I would".

20. The Plaintiff was initially charged with three counts of Aggravated Assault inter alias which were eventually dropped to Simple Assault several months afterward.

21. The Plaintiff was placed under arrest and put in a patrol vehicle as soon as the deputies arrived on the scene.

22. The Plaintiff observed an unmarked white Crown Victoria pull up at the rear of the dealership while he was walking his puppy. A deputy quickly got out of the vehicle with his gun drawn. At gun point the Plaintiff was told to get

on the ground, handcuffs were placed on him, he was searched and placed under arrest and taken and put in a patrol vehicle.

23. A cadre of deputies had arrived on the scene along with the unmarked vehicle but were farther away and formed a perimeter in the front of the dealership.

24. Those deputies would have been able to observe the Plaintiff at that distance and seen that he was peaceably walking his puppy in a grassy area at the rear of the dealership.

25. To the Plaintiff's knowledge, Defendant ECSO deputies didn't take any investigative action until after placing the Plaintiff in handcuffs, under arrest and in the confinement of a patrol vehicle.

26. Video security footage doesn't ever show the Plaintiff with a firearm at any time whatsoever.

27. The Plaintiff did not display a firearm, or even make threats to use one on any occasion he has been at the dealership including April 6th, 5th or any other prior visit. The Plaintiff didn't threaten anyone: customer, employee, supervisor, law enforcement or otherwise.

28. Ultimately, without any evidence of an armed or simple assault being committed (no weapons found, no weapons seen, no statement made by

Plaintiff that he had any weapons or assaulted anyone, no visible injury to Defendants, no evidence of an altercation, statements of Defendants not amounting to anything other than conclusory allegations) the arrest of the Plaintiff was unfounded.

29. Without reason or legal justification the Defendant ECSO performed a false arrest on April 6, 2021 of the Plaintiff which resulted in his detention for eight months until the false charges were dismissed. He was unable to have a reinstatement of his bond for an unrelated offense for two more months. Bringing the total time to ten months.

30. At the time of the false arrest the Plaintiff had an imputed earning capacity of $100,000 a year. Because of the false arrest the Plaintiff lost this earning potential. After the Plaintiff's bond was reinstated it was doubled from $101,000 to $200,000 and he was unable to afford release (even with a payment plan) and had to remain detained for a total of twenty two months until the resolution of an unrelated case.

31. The unrelated case resulted in a guilty conviction at trial and a fifteen year prison sentence.

32. The Plaintiff could have gained a much more positive outcome in the other case if it wasn't for his false arrest which legally and financially handicapped

him.

33. The Plaintiff was barely able to keep his defense counsel on the other case (counsel threatened to withdraw from case due to lack of payment). Even still the Plaintiff was unable to procure an expert witness (which would cost $5,000) that would have helped his case because the Plaintiff served as the only witness for the defense and an expert could have helped raise more reasonable doubt and help the Plaintiff avoid his guilty conviction.

CLAIM IV

*Negligence of the Plaintiff's rights and liberty on behalf of the Defendants ECSO, Pensacola Honda, Zane Presley, Colby Dorris, and Michael Burns*

1. Defendant ECSO is liable for the omission of diligent care reasonable persons performing an investigation of a crime would take through the negligence of the security video footage which clearly showed no assault, aggravated or otherwise, let alone any threatening behavior.

2. Defendant ECSO was negligent for not clearly confirming that Defendants Presley, Dorris, and Burns saw the Plaintiff with a firearm or were at least threatened to be shot by the Plaintiff before arresting him for such a crime.

3. Defendant ECSO was negligent in not gathering proffered information from the Plaintiff in regards to what actions or statements he made while at the dealership that could have been deemed unlawful.

4. Defendant ECSO was negligent of the Plaintiff's 4th Amendment right when they illegally searched his vehicle without a warrant and seized property from within, and just outside of it, including the vehicle itself which was impounded.

5. Defendant Pensacola Honda was negligent of the Plaintiff's status as a

business invitee and the expected standard of treatment and protection that status ensues while he was on dealership property.

6. As a customer who had purchased his vehicle new from Defendant Pensacola Honda and had his vehicle serviced by Honda Automotive virtually exclusively, Plaintiff had the implied invitation to be there for business purposes.

7. It was mutually advantageous for both the Plaintiff and the Defendant whenever the Plaintiff brought his vehicle to Pensacola Honda to be serviced by Honda Automotive staff. The Plaintiff received service to his vehicle and the Defendants received payment and return business.

8. As a new car customer it could reasonably be implied that the dealership had extended invitation to the Plaintiff for purely social purposes as well. For example, if the Plaintiff wanted to stop in and talk about how much he loved his new car, upcoming vehicle lineups, the Honda racing team, or Honda race cars, none of these activities could be deemed unreasonable.

9. Despite his status as a business invitee the Plaintiff was not informed of the request for law enforcement on the day prior to his arrest (April 5th) or the day of (April 6th). In other words, the Plaintiff was not told law enforcement was requested to investigate and potentially arrest him for something he had

done. He also was not asked to leave on either day.

10. Due to his status as an invitee (business or otherwise, implied or expressed) he was owed the greatest duty of care.

11. Defendants Pensacola Honda, Honda Automotive, Presley, Dorris, and Burns were all negligent of this duty when they failed to make the property reasonably safe and protect him from dangers of which they knew of or should have known of by not informing the Plaintiff of his impending arrest or the potential for it before requesting law enforcement, especially since he had done nothing illegal or unreasonable.

12. The Defendants Pensacola Honda, Presley, Dorris, and Burns were negligent by placing the Plaintiff in danger by requesting law enforcement on him when he had done no wrong and by making false allegations to them once they were on the scene. Because of this there was a danger to his life potentially and ultimately to his liberty as shown by his arrest and subsequent twenty two month long detention.

13. The Plaintiff was not a trespasser upon Defendant Pensacola Honda's property and was not asked to leave. Even as such, employees of Defendants Pensacola Honda and Honda Automotive: Presley, Dorris, and Burns could not use that as an excuse to injure him with false allegations of threats and

assault. Even if the Plaintiff was just a licensee the Defendants Pensacola Honda, Presley, Dorris, and Burns shouldn't have willfully injured him with false reports or intentionally exposed him to false arrest as they did.

14. As pointed out earlier, the duty of care required for an invitee, the status of the Plaintiff, was even higher than the two aforementioned statuses (trespasser, or licensee) but the duty of care required by any of the three statuses was neglected by Defendants Pensacola Honda, Honda Automotive, Presley, Dorris, and Burns when he was slandered and arrested for crimes which he didn't commit, irrefutably causing the Plaintiff injury.

15. The basis of the arrest were in part the misrepresentations made to law enforcement by employees of Pensacola Honda and Honda Automotive including Defendants Presley, Dorris, and Burns.

## CLAIM V

*Fraud committed by Defendants Pensacola Honda, Honda Automotive and Zane Presley when diagnosing Plaintiff's vehicle*

1.   The Defendants Presley, Pensacola Honda, and Honda Automotive committed fraud on April 5, 2021 when they misrepresented the issue the Plaintiff was having with his vehicle.

2.   On April 5th Plaintiff brought his vehicle to the dealership because of a "Problems with Emissions System" warning message on his vehicle's dashboard.

3.   Defendant Presley misinformed the Plaintiff that the problem would resolve itself after three ignition starts throughout the day.

4.   Defendant Presley didn't diagnose the vehicle with any equipment before making this statement.

5.   This statement was untrue, and the problem persisted into the next day – April 6, 2021 – which is why the Plaintiff had brought the vehicle back for further diagnostics and resolution.

6.   Defendant Presley can't assert any truthfulness to his claim that the problem would resolve itself because he didn't diagnose the problem and therefore

had no knowledge of what was causing it, or that the cause would no longer be present without further action.

7. Defendant Presley intended for the Plaintiff to rely upon his non-sage advice or prognosis as the Plaintiff has relied upon Defendant Presley's statements in regards to his vehicle several times in the past. There was no need up to this point to not trust Defendant Presley's vehicle maintenance advice.

8. On April 5, 2021 law enforcement was requested to unlawfully arrest Plaintiff.

9. It is reasonable to believe that Defendant Presley was aware that law enforcement had been requested.

10. Defendant Presley is the leading Service Manager of Honda Automotive at the Pensacola Honda location according to the Plaintiff's knowledge and a sworn statement given by Presley to law enforcement. It is reasonable to believe that Presley would be aware of the calls made to law enforcement on both April 5th and April 6th.

11. Beyond mere knowledge the Plaintiff believes it is Defendant Presley that either requested law enforcement or at least sanctioned the request on both April 5th and April 6th because on April 6th when the Plaintiff returned from

walking to Dollar General and asked why his vehicle was parked in between the vehicle intake lobby and the service bay, Defendant Presley replied: "We're waiting on dispatch."

12. After relying on Defendant Presley's unsound advice and waiting for the issue to resolve itself, the Plaintiff brought his vehicle back to Defendant Pensacola Honda for repairs on April 6th where law enforcement was called on him, an illegal search and seizure ensued, his constitutional rights were violated and he was ultimately unlawfully arrested. All this resulted from the fraud perpetrated by Defendant Zane Presley on April 5, 2021.

## CLAIM VI

*Abuse of Process by the Defendant's Pensacola Honda, Honda Automotive, Zane Presley, Colby Dorris, and Michael Burns*

1. Plaintiff suffered injury to his character, to his liberty, to his ability to generate income as the result of a false report to law enforcement made by Defendants Pensacola Honda, Zane Presley, Colby Dorris, and Michael Burns.

2. Plaintiff avows that he didn't threaten anyone including any of the defendants at the dealership on April 6th, 5th or any date before then, nor did he ever assault anyone. He didn't have a firearm nor was mention of one made by him on April 5th or April 6th (the days law enforcement were requested for a possible armed disturbance).

3. The Plaintiff avows all accusations made by the defendants of unlawful acts committed by the Plaintiff are completely and totally false. Also, the defendants never claimed to have seen the Plaintiff with a firearm but requested law enforcement and gave reports falsely implying that he had threatened them with one.

4. The Plaintiff was at the dealership to have his vehicle serviced and upon

realizing that defendants had no intention to oblige his request was in the process of walking his puppy before leaving.

5. The defendants made false reports to get the Plaintiff unlawfully arrested. By doing this they showed reckless disregard for the Plaintiff's rights. They violated his 1st amendment right under the U.S. Constitution by slandering him when requesting police via a 911 call and with libel in the form of a false police report; this violated his 5th and 14th amendment rights to due process as well.

6. It was Abuse of Process for Defendants Pensacola Honda, Honda Automotive, Presley, Dorris, and Burns to stop the Plaintiff from doing legal business, in the form of routine maintenance and service, as well as unexpected repairs, as a customer and new car purchaser by using false allegations to have him arrested; placed under trespass notice; detained in county jail for at least 8 months, and have his bond revoked which culminated in a 22 month detainment.

7. The Defendants Pensacola Honda, Honda Automotive, Presley, Dorris, and Burns could not legally compel the Plaintiff to stop bringing his car to be serviced without moving forward with the false allegations. This wrongdoing was compounded when the Defendants did not step in and

admit the Plaintiff had indeed not committed any crime once it was clear an arrest was going to be made.

8. In essence, Defendants Pensacola Honda, Honda Automotive, Presley, Dorris, and Burns used the false report and illegal arrest to make a "trespass warning" or "trespass notice" to bar the Plaintiff from returning to the dealership. This occurred when an unknown employee explicitly stated "You are no longer allowed on the premises and will be arrested for trespassing if you return." The unknown employee was directed to make this statement by law enforcement. This statement was made with law enforcement as a witness so that the Plaintiff could lawfully be arrested for trespassing if he was found on the property in the future. The statement was made to the Plaintiff while under arrest in a patrol vehicle moments before he was transported to the Escambia County jail and booked on aggravated assault charges.

CLAIM VII

*Libel and Slander by the Defendant's Pensacola Honda, Honda Automotive, Zane Presley, Colby Dorris, and Michael Burns*

1. Defendants Pensacola Honda, Honda Automotive, Presley, Dorris, and Burns slandered the Plaintiff by making false reports to law enforcement and also performed libel by providing false sworn statements alleging the Plaintiff had threatened them.

2. The slander was commenced on April 5, 2021 and perpetrated further on April 6, 2021 when (on both dates) law enforcement was requested by the Defendants (or their employees) for an armed disturbance.

3. Libel was committed on April 6, 2021 when the Defendants (or their employees) provided the sworn statements which lead to the Plaintiff's arrest.

4. The Defendants knew the information being provided about the Plaintiff was false. The Defendants showed reckless disregard for the truth.

5. The Plaintiff suffered injury to his reputation, earning potential, emotional suffering, mental duress, and subsequent legal ramifications as pointed out in the aforementioned facts.

Battle-Donson v Honda - Statement of Facts – Page 46

6. The Plaintiff has previously outlined how he has suffered actual injury: impairment of reputation in the community, personal humiliation, mental anguish and suffering.

7. The Defendants are not protected by qualified privilege or limited immunity because they knew no crime had been committed and had the opportunity to let law enforcement know but failed to do so.

8. Because of this the Defendants didn't commit an innocent mistake. They engaged in reckless, wanton and culpable conduct when reporting a crime that had not taken place and furthering their false allegations in depositional testimony.

9. The libel given in depositions by the Defendants makes it evidently clear that they had no regard from the Plaintiff's rights, liberty, or livelihood.

**Statement of Facts Continued (*Page____of_____*)**

See previous pages: "Battle-Donson v. Honda - Statement of Facts - Page 1" to "Battle-Donson v. Honda - Statement of Facts - Page 47"

# V. STATEMENT OF CLAIMS

State what rights under the Constitution, laws, or treaties of the United States

have been violated. Be specific. If more than one claim is asserted, number each

separate claim and relate it to the facts alleged in Section IV. If more than one

Defendant is named, indicate which claim is presented against which Defendant.

Claim 1: 4th, 5th ; 14th U.S. Const. Amend. Rights Violation by ECSO;

Claim 2: Malicious Prosecution by Honda and its Employees;

Claim 3: False Arrest by ECSO caused by Honda Employees;

Claim 4: Negligence of Plaintiff's Rights ; Liberty by ECSO, Honda and its Employees;

Claim 5: Fraud Committed by Honda and its Employees;

Claim 6: Abuse of Process by Honda and its Employees;

Claim 7: Libel and Slander by Honda and its Employees on the Plaintiff;

# VI. RELIEF REQUESTED

State briefly what relief you seek from the Court. Do not make legal

arguments or cite to cases/ statutes. If requesting money damages *(either*

*actual or punitive damages)*, include the amount sought and explain the basis

for the claims.

Compensatory damages for loss wages and finances as well as

punitive damages. $180,000 for the former and $230,000

for the former. A total of: $410,000.00 all together

due to the reasons outlined/detailed in the statement of facts.

## VII.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust all available administrative remedies (*grievance procedures*) before bringing a case. 42 U.S.C. § 1997e(a). **ATTENTION:** *If you did not exhaust available remedies prior to filing this case, this case may be dismissed.*  If the case is dismissed for failure to exhaust or for any reason, you will still be required to pay the full filing fee and the dismissal may count as a "strike" under 28 U.S.C. § 1915(g). Therefore, please consider whether you have fully exhausted your remedies before proceeding with this action.

## VIII.  PRIOR LITIGATION

*This section requires you to identify your prior litigation history.  Be advised that failure to disclose all prior state and federal cases—including, but not limited to civil cases, habeas cases, and appeals—may result in the dismissal of this case.  You should err on the side of caution if you are uncertain whether a case should be identified.*

**ATTENTION:** *The "three strikes rule" of the PLRA bars a prisoner from bringing a case without full payment of the filing fee at the time of case initiation if the prisoner has "on three or more prior occasions, while*

*incarcerated or detained in any facility, brought an action or appeal in a*
*court of the United States that was dismissed on the grounds that it is*
*frivolous, malicious, or fails to state a claim upon which relief may be*
*granted, unless the prisoner is under imminent danger of serious physical*
*injury." 28 U.S.C. § 1915(g).*

A. Have you had any case in federal court, including federal appellate
   court, dismissed as frivolous, as malicious, for failure to state a
   claim, or prior to service?

   ☐ YES   ☑ NO

   If "Yes," identify the case number, date of dismissal, and court for
   each case:

   1. Date:_____Case #: _____

      Court: _____

      Reason: _____

   2. Date:_____Case #: _____

      Court: _____

      Reason: _____

   3. Date:_____Case #: _____

      Court: _____

      Reason: _____

*(If necessary, list additional cases on an attached page)*

B. Have you filed other lawsuits or appeals in *state or federal court* dealing

with the same facts or issue involved in this case?

☐ YES ☑ NO

If "Yes," identify the case number, parties, date filed, result (*if not still*

*pending*), name of judge, and court for each case (*if more than one*):

1. Case #:_____Parties: _____

   Court:_____Judge: _____

   Date Filed:_____Dismissal Date (*if not pending*): _____

   Reason: _____

2. Case #:_____Parties: _____

   Court:_____Judge: _____

   Date Filed:_____Dismissal Date (*if not pending*): _____

   Reason: _____

   *(If necessary, list additional cases on an attached page)*

C. Have you filed any other lawsuit, habeas corpus petition, or appeal in

*state or federal court* either challenging your conviction or relating to

the conditions of your confinement?.

☑ YES  ☐ NO

If "Yes," identify all lawsuits, petitions and appeals:

1. Case #: 1D23-0907     Parties: Delanie J. Battle-Donson v. State of Florida

   Court: Fla. 1st DCA          Judge: Hon. Pamela Childers

   Date Filed: 4/18/23     Dismissal Date (*if not pending*): _____

   Reason: Direct Appeal of Sentence ; Criminal Conviction

2. Case #:_____Parties: _____

   Court:_____Judge: _____

   Date Filed:_____Dismissal Date (*if not pending*): _____

   Reason: _____

3. Case #:_____Parties: _____

   Court:_____Judge: _____

   Date Filed:_____Dismissal Date (*if not pending*): _____

   Reason: _____

4. Case #:_____Parties: _____

   Court:_____Judge: _____

   Date Filed:_____Dismissal Date (*if not pending*): _____

   Reason: _____

5. Case #:_____Parties: _____

   Court:_____Judge: _____

   Date Filed:_____Dismissal Date (*if not pending*): _____

   Reason: _____

6. Case #:_____Parties: _____

Court:_____Judge: _____

Date Filed:_____Dismissal Date (*if not pending*): _____

Reason: _____

*(Attach additional pages as necessary to list all cases.)*

## IX. CERTIFICATION

1. I declare, under penalty of perjury, that all of the information stated above and included on or with this form, including my litigation history, is true and correct.

2. Additionally, as required by Federal Rule of Civil Procedure 11, I certify that to the best of my knowledge, information, and belief, this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non- frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

3. I understand it is my obligation to timely notify the Clerk's Office if there is any change to my mailing address and that my failure to do so may result in a dismissal of the action.

Date: 10|15|24 Plaintiff's Signature: *Delanie Jamal Battle - Donson*

Printed Name of Plaintiff: Delanie J. Battle-Donson

Correctional Institution: Franklin Correctional Institution

Address: 1760 Hwy. 67 North

Carabelle, FL 32322

I certify and declare, under penalty of perjury, that this complaint was (*check one*) ☐ delivered to prison officials for mailing or ☐ deposited in the prison's mail system for mailing on the 15th day of October, 2024.

Signature of Incarcerated Plaintiff: *Delanie Jamial Battle - Donson*

Delanie J. Battle-Donson
DC # U81747
1760 Hwy 67 North
Carrabelle, FL 32322



PRIORITY MAIL

US POSTAGE IMI PITNEY BOWE

ZIP 32322
02 7H
0006193764    NOV 05 202

$ 012.10

CLERK OF COURT
U.S. DISTRICT COURT
OF NORTHERN FLORIDA
PENSACOLA DIVISION
100 NORTH PALA FOX ST.,
PENSA COLA, FL 32502-5658